**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 04:30 PM March 5, 2013**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| LAUREL VALLEY OIL CO., | ) | CASE NO. 05-64330 |
| | ) | |
| Debtor. | ) | ADV. NO. 12-6014 |
| | ) | |
| ANTHONY J. DEGIROLAMO, | ) | JUDGE RUSS KENDIG |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION (NOT** |
| MCINTOSH OIL CO., | ) | **INTENDED FOR PUBLICATION)** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

Now before the Court is Defendant McIntosh Oil Co.'s motion for partial summary judgment on forward contract safe harbor defense, filed on November 2, 2012.

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on April 4, 2012. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (H).

This opinion is not intended for publication or citation. The availability of this opinion, in

1

electronic or printed form, is not the result of a direct submission by the court.

This matter arises in the Chapter 7 bankruptcy of Laurel Valley Oil Co. ("Debtor"). The chapter 7 trustee, Anthony J. DeGirolamo, ("Plaintiff" or "Trustee") filed an amended complaint on July 10, 2012 seeking to avoid and recover fraudulent and preferential transfers. Prior to the filing of the bankruptcy petition, Debtor was in the business of buying and selling petroleum products, including diesel fuel. Due to cash shortages, Debtor began selling diesel fuel to certain customers on a prepaid basis at an amount significantly less than the market price for which it purchased the fuel.

McIntosh Oil Co. ("McIntosh" or "Defendant") was one of Debtor's pre-pay customers. Plaintiff alleges that Defendant purchased fuel from Debtor on a prepaid basis at a price of $11,379,731.19 while the market price for such fuel was $15,050,917.68. Further, Plaintiff alleges that Debtor suffered a loss of $3,671,186.50 while McIntosh received a benefit of the same amount resulting from the pre-paid contracts. McIntosh admits to entering into pre-paid contracts with Debtor and paying approximately $11,919,000.00 to Debtor under those contracts, but denies any resulting loss to Debtor or gain to itself as a result of the pre-paid contracts.

Plaintiff's complaint alleges seven (7) counts: Count I Fraudulent Transfer under 11 U.S.C. § 548(a)(1)(A); Count II Fraudulent Transfer under 11 U.S.C. § 548(a)(1)(B); Count III Fraudulent Transfer under 11 U.S.C. § 544(b) and O.R.C. § 1336.04(A)(1); Count IV Fraudulent Transfer under 11 U.S.C. § 544(b) and O.R.C. § 1336.04(A)(2); Count V Fraudulent Transfers under 11 U.S.C. § 544(b) and O.R.C. § 1336.05(A); Count VI Preferential Transfer under 11 U.S.C. § 544(b) and O.R.C. § 1313.56; and Count VII Preferential Transfer under 11 U.S.C. § 547(b).

On November 2, 2012, McIntosh filed a motion for partial summary judgment seeking judgment partial summary judgment on Count I and summary judgment on Counts II through VII. Plaintiff filed a brief in opposition to the motion on December 10, 2012 and McIntosh filed a reply on December 20, 2012.

McIntosh's motion is premised upon a forward contract safe harbor defense pursuant to 11 U.S.C. § 546(e) with respect to all Counts. With respect to Count I, McIntosh recognizes it also must prove that it received transfers in good faith, which Plaintiff disputes. Accordingly, McIntosh seeks only partial summary judgment for Count I and seeks to prove its good faith at further proceedings.

## LAW AND ANALYSIS

Federal Rule of Civil Procedure 56(a), applicable to this proceeding by way of Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is not appropriate if a material dispute of fact arises such that a "reasonable jury could return a verdict for the nonmoving party." Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

McIntosh asserts that summary judgment is appropriate due to the forward contract safe harbor defense of 11 U.S.C. § 546(e), which provides in relevant part:

> [T]he trustee may not avoid a transfer that is a . . . settlement payment, as defined in section 101 or 741 of this title, made by or to (or for the benefit of) a . . . forward contract merchant … or that is a transfer made by or to (or for the benefit of) a . . . forward contract merchant . . . in connection with a . . . forward contract, that is made before the commencement of the case.

Under McIntosh's argument, if the contracts between McIntosh and Debtor are forward contracts, the delivery of diesel fuel is considered a settlement payment, and either or both parties are considered forward contract merchants, then the forward contract safe harbor defense applies. Plaintiff disputes all of these arguments. The Court will review each component individually to determine whether the forward contract safe harbor defense applies.

I. Forward Contracts

The Bankruptcy Code defines a "forward contract" as:

> [A] contract (other than a commodity contract, as defined in section 761) for the purchase, sale, or transfer of a commodity, as defined in section 761(8) of this title, or any similar good, article, service, right, or interest which is presently or in the future becomes the subject of dealing in the forward contract trade, or product or by-product thereof, with a maturity date more than two days after the date the contract is entered into.

11 U.S.C. § 101(25)(A).

There is no dispute that diesel fuel is a commodity within the meaning of forward contract in the Bankruptcy Code. The dispute arises regarding whether or not the contracts between Debtor and McIntosh had a maturity date more than two days after the contract was entered. McIntosh argues that the maturity date was the date on which Debtor delivered the diesel fuel, while Plaintiff argues that the maturity date was the date on which McIntosh paid for the diesel fuel.[1] Since, at all times, McIntosh paid for the diesel fuel on the same days as the contracts were entered, if the payment dates are the maturity dates, then the contracts are not forward contracts.

McIntosh, contrary to Plaintiff's position, argues that the maturity date is the date on which the benefit or detriment will be realized to each party, i.e. the date of the delivery of diesel fuel. The contract's credit terms, i.e. whether the buyer pays in advance for the commodity or is extended credit to pay at or after delivery, is irrelevant to whether a contract is a forward contract.

---

[1] Delivery is used for the contract law meaning of the term. McIntosh picked up the diesel fuel at a Marathon Oil facility. It was not physically delivered.

3

The Bankruptcy Code does not define the term "maturity date." Few courts, and none in the Sixth Circuit, have addressed the definition of maturity date for purposes of a forward contract and a §546(e) defense. Any definition of maturity date must consider the purpose and intent of §546(e). As one court noted, its purpose "is to protect the financial markets 'from destabilizing effects of bankruptcy proceedings for parties to specified commodities and financial contracts.'" McKittrick v. Gavilon, LLC (In re Cascade Grain Prods., LLC), 465 B.R. 570, 574 (Bankr. D. Or. 2011) (quoting In re Nat'l Gas Distribs., LLC, 556 F.3d 247, 252 (4th Cir. 2009)).

> The primary purpose of a forward contract is to hedge against possible fluctuations in the price of a commodity. This purpose is financial and risk-shifting in nature, as opposed to the primary purpose of an ordinary commodity contract, which is to arrange for the purchase and sale of the commodity.

H.R. Rep. No. 101-484, at 3 (1990); *accord* Cascade Grain Prods., 465 B.R. at 575; U.S. Bank Nat'l Assoc. v. Plains Mktg. Can. LP (In re Renew Energy LLC), 463 B.R. 475, 479 (Bankr. W.D. Wisc. 2011). In other words, forward contracts, in order to hedge against possible fluctuations in price, set a price currently for delivery sometime in the future. *See* Cascade Grain Prods., 465 B.R. at 575 (citing Commodity Futures Trading Comm'n v. Erskine, 512 F.3d 309, 324-25 (6th Cir. 2008)).

This Court sees no distinction regarding whether the buyer pays in advance for a future delivery, at the time of delivery, or at some point after delivery. The key factor of a forward contract, that the parties are hedging against fluctuations in price, remains constant regardless of when the buyer actually pays the cash. The risk/benefit aspect of the forward contract is not realized at the time of payment, but rather at the time of delivery of the commodity. If the market price of the commodity is less than the contract price on the date of delivery, the seller wins, and vice versa. Thus, this Court finds that the definition of "maturity date" is the date on which the benefit and detriment of the contract will be realized by the parties based upon the market price at the time of delivery. *Accord* Buchwald v. Williams Energy Mktg. & Trading Co. (In re Magnesium Corp. of Am.), 460 B.R. 360, 373 (Bankr. S.D.N.Y. 2011) (discussing that maturity date requires an examination of the time at which the underlying commodity is to be *delivered*); Cascade Grain Products, 465 B.R. at 575 (defining maturity date as the date on which the benefit or detriment will be realized). The key factor of this definition is that it is the time when the benefit or detriment of the contract is realized, not whether it signals the buyer's obligation to pay.

Applying this definition to the instant matter, Debtor and McIntosh did not realize any benefit or loss until Debtor actually delivered the diesel fuel to McIntosh. Accordingly, the Court finds the contracts at issue are forward contracts as defined in 11 U.S.C. § 101(25).

II. Forward Contract Merchant

The Bankruptcy Code defines "forward contract merchant" as:

4

[A] Federal reserve bank, or an entity the business of which consists in whole or in part of entering into forward contracts as or with merchants in a commodity (as defined in section 761) or any similar good, article, service, right, or interest which is presently or in the future becomes subject of dealing in the forward contract trade.

11 U.S.C. § 101(26). Plaintiff argues that neither Debtor nor McIntosh were forward contract merchants. Debtor was not a forward contract merchant because it was not entering the contracts to make a profit and McIntosh was not a forward contract merchant because it was not part of its business to enter forward contract with these contracts being the first of this type that it entered. McIntosh argues that either Debtor or itself must be a forward contract merchant for § 546(e) to apply and that both Debtor and itself are forward contract merchants.

Section 101(26) sets forth two elements that a party must meet to be a forward contract merchant: 1) its business must consist in whole or in part of entering into forward contracts as or with merchants; and 2) the contract must involve a commodity or similar good, article, service, right, or interest. There is no dispute that the contracts between Debtor and McIntosh involved a commodity. Thus, only the first element is at issue.

While few courts have analyzed the definition of forward contract merchant, those that have reached opposing conclusions of the breadth of the definition. To find a narrow definition, one court focused on the words "business" and "merchant." Mirant Americas Energy Marketing, L.P. v. Kern Oil & Refining Co. (In re Mirant Corp.), 310 B.R. 548, 567 (Bankr. N.D. Tex. 2004). The Mirant court defined a "merchant" as "one that is not acting as either an end-user or a producer . . . [r]ather . . . is one that buys, sells or trades in a market." 310 B.R. at 567 (citing Black's Law Dictionary 1001 (7th ed. 1999)). The Mirant court defined "business" as "something one engages in to generate a profit." 310 B.R. at 568. To reach these conclusions, the court emphasized that the term forward contract merchant should not mean that every party to a contract for goods or services falls within the definition. Id. Rather, the court concludes that "a forward contract merchant is a person that, in order to profit, engages in the forward contract trade as a merchant or with merchants." Id.; *accord* Superior Livestock Auction, Inc. v. E. Livestock co., LLC (In re E. Livestock Co., LLC), Case No. 10-93905-BHL-11, Adv. No. 11-59088, 2012 Bankr. LEXIS 1469, at 17-19 (Bankr. S.D. Ind. Apr. 5, 2012); Magnesium Corp. of Am. 460 B.R. at 376.

At the opposite end of the spectrum, another court discussed that the inclusion of the phrase "in whole or in part" in the definition has the effect of including "essentially any person that is in need of protection with, respect to a forward contract in a business setting should be covered, except in the unusual instance of a forward contract between two nonmerchants who do not enter into forward contracts with merchants." BCP Liquidating LLC v. Bridgeline Gas Marketing, LLC (In re Borden Chems. and Plastics Operating L.P.), 336 B.R. 214, 225 (Bankr. D. Del. 2006) (quoting 5 Collier on Bankruptcy § 556.03[2] at 556-6 (15th ed. Rev. 2001)). This definition provides a much broader scope than the definition set forth in Mirant.

Looking first at McIntosh, the Court finds it is a forward contract merchant under either

5

definition set forth above.  First, there is no dispute that McIntosh is a merchant under the definition adopted in Mirant.  McIntosh was neither a producer nor an end-user of the diesel fuel. Rather, McIntosh purchased the diesel fuel from Debtor and resold it to its customers.  Second, Plaintiff does not dispute that McIntosh engaged in these contracts to make a profit.  Instead, Plaintiff argues that it could not be part of its business to enter forward contracts because, prior to these contracts, it had never entered into a forward contract.  The Mirant definition, which Plaintiff cites and relies upon, does not address whether the contract at issue is a party's first or millionth forward contract.  The Mirant definition focuses only on whether a party's business is to generate profit.  Plaintiff presented no evidence to support that McIntosh did not enter the contracts to generate a profit.[2]  Thus, McIntosh is a forward contract merchant under either definition.

McIntosh is only required to establish that either itself or Debtor is a forward contract merchant.  See 11 U.S.C. § 546(e); accord Magnesium Corp. of Am. 460 B.R. at 376.  Whether or not Debtor is also a forward contract merchant is irrelevant to McIntosh's § 546(e) defense at this time.

III.   Settlement Payments

The Bankruptcy Code defines "settlement payment" for purposes of the forward contract provisions as:

> [A] preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, a net settlement payment, or any other similar payment commonly used in the forward contract trade.

11 U.S.C. § 101(51A).  Plaintiff argues that the deliveries of diesel fuel are not settlement payments as defined by § 101(51A) because deliveries at well-below market value are not commonly used in the forward contract trade.

Courts interpreting the definition of settlement payment in § 101(51A) have applied it broadly.  See, e.g., Williams v. Morgan Stanley capital Group Inc. (In re Olympic Natural Gas Co.), 294 F.3d 737, 742 (5th Cir. 2002) (citing 5 Collier on Bankruptcy P 546.06[2][b], at 546-48 (settlement payment should be interpreted very broadly); Kaiser Steel Corp. v. Pearl Brewing Co. (In re Kaiser Steel Corp.), 952 F.2d 1230, 1240 (11th Cir. 1991) (advocating broad interpretation of settlement payment)); Magnesium Corp. of Am., 460 B.R. at 375 ("it is not unreasonable to consider 'settlement payments' to cover one-on-one payments to meet such forward contracts' financial obligations"); Renew Energy, 463 B.R. at 480 ("it is reasonably clear that a 'settlement

---

[2] Plaintiff also states that McIntosh only entered the contracts with Debtor because absent these contracts, McIntosh could not get any business due to the Debtor's low prices.  Whether or not Plaintiff can establish this fact is irrelevant to the issue of whether McIntosh entered the contracts to generate a profit.  Regardless of why McIntosh chose to do business with Debtor, there is no evidence that McIntosh entered these contracts to lose money, but rather to generate profits.

6

payment' follows the maturity of a forward contract and consists of the consideration to settle (or complete all obligations under) that contract"); Borden Chems. and Plastics Operating, 336 B.R. at 225 (adopting definition of settlement payment to include "transfers which are normally regarded as part of the settlement process, whether they occur on the trade date, the scheduled settlement day, or any other date in the settlement process for the particular type of transaction at hand").

Given the broad application of the definition of settlement payment, the Court finds that the deliveries of diesel fuel by Debtor constitute settlement payments for purposes of § 546(e). As the court in Renew Energy stated, the settlement payment consists of the consideration to complete all obligations under the contract. Here, Debtor's deliveries of the diesel fuel constitute the consideration of the contracts. If the deliveries of diesel fuel cannot be considered settlement payments, then the Court questions what consideration to a contract, other than a cash payment, could ever be defined as a settlement payment. Since the deliveries of the diesel fuel were Debtor's only obligations under the contracts and since the deliveries of the diesel fuel determine the realization of the benefit and detriment to the parties, the deliveries must be classified as settlement payments. Otherwise, the Court cannot conceive of any scenario where a purchaser can invoke the protections of § 546(e) if only cash payments can be considered settlement payments. The Bankruptcy Code places no such limitation on § 546(e). Thus, the deliveries of diesel fuel must be one of the types of transfers contemplated as settlement payments under the Bankruptcy Code.

Plaintiff argues that the delivery of diesel fuel cannot constitute a settlement payment because McIntosh paid less than market value for it. The Bankruptcy Code does not set forth any requirement that the § 546(e) safe harbor defense for forward contracts only applies to those made at market value. This Court is unable to find any case law that premises whether or not consideration is a settlement payment based on whether the consideration is given at market value.

Having found no genuine disputes of material facts, McIntosh has met its burden of proof with respect to its § 546(e) forward contract safe harbor defense as set forth above. Accordingly, the Court will grant summary judgment in favor of McIntosh as to Counts II through IV of the complaint.

IV.     § 548(a)(1)(A)

While McIntosh's § 546(e) defense does not directly apply to Plaintiff's Count I claim under § 548(a)(1)(A), Plaintiff does not dispute that a forward contract merchant that receives a settlement payment takes for value to the extent of such payment for purposes of the "for-value" defense under § 548(c). Having found above that the contracts between Debtor and McIntosh were forward contracts, that McIntosh is a forward contract merchant and that the deliveries of diesel fuel by Debtor and/or the cash payments by McIntosh constitute settlement payments, McIntosh is entitled to partial summary judgment with respect to Count I on these legal issues.

An order will be entered simultaneously with this opinion.

7

# # #

**Service List:**

Jack B Cooper
Day Ketterer
200 Market Ave N
#300
Canton, OH 44701-4213

Anthony J. DeGirolamo
Courtyard Centre
Suite 625
116 Cleveland Avenue NW
Canton, OH 44702

Alan M Koschik
Brouse McDowell, L.P.A.
600 Superior Avenue, E.
Suite 1600
Cleveland, OH 44114

8