**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 05:21 PM February 25, 2014**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| LAUREL VALLEY OIL CO., ) | CASE NO. 05-64330 |
| ) | |
| Debtor. ) | ADV. NO. 12-6014 |
| _____ ) | |
| ) | JUDGE RUSS KENDIG |
| ANTHONY J. DEGIROLAMO, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | **MEMORANDOM OF OPINION (NOT** |
| ) | **INTENDED FOR PUBLICATION)** |
| MCINTOSH OIL CO., ) | |
| ) | |
| Defendant. ) | |

On July 10, 2012, Anthony J. DeGirolamo, the chapter 7 panel trustee ("Trustee"), filed an amended complaint seeking to avoid and recover allegedly fraudulent and preferential transfers between Laurel Valley Oil Co. ("Debtor") and McIntosh Oil Co. ("McIntosh"). Debtor was in the business of buying and selling petroleum products, including diesel fuel. Debtor ran into cash shortages and began selling diesel fuel to Debtor, as well as other companies in the Canton, Ohio area, on pre-pay contracts at prices below Debtor's purchase price. Debtor was losing money on every sale and eventually filed for chapter 11 bankruptcy protection on July 27, 2005 (the case was converted to chapter 7 on September 15, 2005).

1

Trustee's complaint alleges that McIntosh purchased diesel fuel from Debtor for $11,379,731.19 when the actual market price for the fuel was $15,050,917.68. Therefore, according to Trustee, Debtor received a preferential or fraudulent transfer of $3,671,186.50 (the difference between McIntosh's purchase price and the market price), which Trustee seeks to recover for the benefit of the bankruptcy estate. Trustee's complaint consists of seven different claims, all of which focus on fraudulent or preferential transfers.

On November 2, 2012, McIntosh filed a motion for summary judgment on Trustee's claims II through VII, arguing that the forward contract safe harbor located within 11 U.S.C. § 546(e) insulates McIntosh from liability. Trustee disagreed and filed a brief in opposition on December 10, 2012. The court took the matter under advisement, and in a memorandum of opinion dated March 5, 2013 agreed with McIntosh and granted summary judgment on claims II through VII. The court did not grant summary judgment on count I, as it relates to allegations that are unprotected by the forward contract safe harbor of § 546(e).

Claim I alleges a fraudulent transfer made with "actual intent to hinder, delay, or defraud" creditors in violation of § 548(a)(1)(A), which is not protected by the forward contract safe harbor. However, § 548(c) does protect McIntosh from liability on a § 548(a)(1)(A) claim if McIntosh "takes for value and in good faith." Section 548(d)(2)(B) states that a "forward contract merchant . . . that receives a . . . settlement payment . . . takes for value to the extent of such payment." Because the court determined in its previous opinion that McIntosh is a forward contract merchant and the receipt of diesel fuel constitutes a settlement payment, value is established. Therefore, the only element remaining under a § 548(c) defense is McIntosh's good faith. However, if good faith cannot be established, a claim for an actual fraudulent transfer in violation of § 548(a)(1)(A) remains applicable.

On February 7, 2014, McIntosh filed a motion seeking to bifurcate the adversary proceeding into two evidentiary hearings. McIntosh prefers one hearing to determine if it acted in good faith within the meaning of § 548(c). If the court rules in McIntosh's favor, § 548(a)(1)(A) is moot and a second hearing is not needed. If the court rules against McIntosh, the court would need to schedule a hearing on the elements of a fraudulent transfer in violation of § 548(a)(1)(A). Instead of potentially conducting two hearings, Trustee prefers that good faith under § 548(c) and fraudulent transfers under § 548(a)(1)(A) be determined at one hearing.

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on April 4, 2012. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core matter under 28 U.S.C. § 157(b)(2)(A), (H).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court

## Law and Analysis

Federal Rule of Civil Procedure 42(b), made applicable in bankruptcy by Federal Rule of Bankruptcy Procedure 7042(b), states that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims."

Therefore, bifurcation is appropriate (1) "in furtherance of convenience," (2) "to avoid prejudice," or (3) "when separate trials will be conducive to expedition and economy." Saxion v. Titan-C-Mfg., Inc., 86 F.3d 553, 556 (6th Cir. 1996). Courts have wide discretion when making bifurcation decisions, but that discretion must be grounded in one of the factors outlined in Rule 7042(b). See Nationwide Mut. Fire Ins. Co. v. Jahic, 2013 WL 98059, at *2 (W.D. Ky. 2013); S.S. v. Leatt Corp., 2014 WL 356938, at *1 (N.D. Ohio 2014). Only one of the criteria from Rule 7042(b) needs to be met to justify bifurcation. Saxion, 86 F.3d at 556.

"[B]ifurcation is the exception to the general rule that favors resolving disputes in a single proceeding." Wolkosky v. 21st Century Centennial Ins. Co., 2010 WL 2788676, at *3 (S.D. Ohio 2010) (internal quotation marks omitted); see also Saxion, 86 F.3d at 556 ("Motions for bifurcation are more often denied than granted."); Eighth Floor Promotions, LLC v. R.S. Owens & Co., Inc., 2009 WL 2982873, at *1 (S.D. Ohio 2009). In other words, "bifurcation should be ordered only in exceptional cases." Chubb Custom Ins. Co. v. Grange Mut. Cas. Co., 2008 WL 4823069, at *2 (S.D. Ohio 2008). The party seeking bifurcation bears the burden of demonstrating that it is appropriate. Farmers Bank of Lynchburg, Tenn. v. Bancinsure, Inc., 2011 WL 2023301, at *1 (W.D. Tenn. 2011).

I. The Arguments of the Parties

McIntosh argues that bifurcation is appropriate because a finding that McIntosh acted in good faith in its transactions with Debtor insulates McIntosh from liability on claim I. Therefore, judicial economy is best served by holding a trial on the issue of good faith, because if McIntosh is successful under § 548(c) a second hearing on actual fraud is not required. Similarly, McIntosh argues that bifurcation is beneficial because a hearing on good faith will require significantly less evidence and testimony that a hearing on both good faith and actual fraud. Trustee argues that the evidence and testimony that will be presented at a hearing for good faith under § 548(c) and a fraudulent transfer under § 548(a)(1)(A) overlaps substantially. Therefore, bifurcation will result in duplicative evidence and testimony, creating judicial inefficiency.

II. The Court's Hearing on § 548(a)(1)(A) and § 548(c) Should Not be Bifurcated

Courts have wide discretion when making decisions on whether or not claims should be bifurcated. Jahic, 2013 WL 98059, at *2. Based on the language of Rule 7042(b), courts must ground any decision to bifurcate on whether separate trials or hearings will be "in furtherance of convenience," "avoid prejudice," or "be conducive to expedition and economy." Saxion, 86 F.3d at 556. However, even with wide discretion, bifurcation is not the norm in federal proceedings and should only be granted in "exceptional cases." Penn, LLC v. Prosper Bus. Dev. Corp., 2013 WL 4479216, at *5 (S.D. Ohio 2013); 8 James Wm. Moore et al., Moore's Federal Practice § 42.20[04][a] (3d ed. 2001). Bifurcation based on convenience normally occurs when differing claims contain unrelated issues, especially when the new issues are raised in a cross-claim or counter-claim. 8 Moore's Federal Practice § 42.04[b]. Bifurcation to avoid prejudice may occur in jury trials where the court is sufficiently concerned that a jury's reaction to evidence in support of one claim may unduly prejudice the jury's view of a separate claim. 8 Moore's Federal Practice § 42.20[4][c]. Expedition and economy favor bifurcation when a determination on one claim may obviate the need to pursue other claims or when issues do not have significant

evidentiary overlap. Helminski v. Ayerst Labs.,766 F.2d 208, 212 (6th Cir.1985); Yacub v. Sandoz Pharms. Corp., 85 F. Supp. 2d 817, 828 (S.D. Ohio 1999); 8 Moore's Federal Practice § 42.20[4][d] (noting that bifurcation may be appropriate for issues pertaining to venue, an arguably applicable statute of limitations, or whether a release was properly signed). If the claims "raise many similar factual issues . . . judicial economy will be served by the resolution of the entire controversy in one forum." Taylor Novelty, Inc. v. City of Taylor, 816 F.2d 682 (6th Cir.1987); Procter & Gamble Co. v. CAO Grp., Inc., 2013 WL 6061103, at *2 (S.D. Ohio 2013). Two common areas where the Sixth Circuit has approved bifurcation are in insurance and patent liability cases, where courts may bifurcate trials on liability and damages. See e.g., Mesh Comm, LLC v. E.On US, LLC, 2011 WL 11563901, at *6 (W.D. Ky. 2011) (holding that questions of willful infringement and liability are "substantially separate and apart from questions relating to damages"). Neither party's belief as to their likelihood of success on the merits has any bearing on the court's bifurcation decision. Int'l Bhd. Of Elec. Workers v. Am. Laundry Mach., Inc., 2010 WL 200396, at *3–4 (S.D. Ohio 2010). When making a final bifurcation decision, courts balance all of the above concerns. Kiser v. Bryant Elec. (In re Beverly Hills Fire Litig.), 695 F.2d 207, 216 (6th Cir. 1982).

To determine if the current case is likely to result in evidentiary overlap, the court will look to the elements of a claim under § 548(a)(1)(A) and 548(c). Under § 548(a)(1)(A) the trustee must prove three elements:

> (1) that there was a transfer of an interest of the debtor in property;
> (2) that the transfer occurred within one year prior to the date of the filing of the bankruptcy petition; and
> (3) that the transfer was made with the actual intent to hinder, defraud or delay.

11 U.S.C. § 548(a)(1)–(a)(1)(A); Richardson v. Huntington Nat'l Bank (In re CyberCo Holdings, Inc.), 382 B.R. 118, 135 (Bankr. W.D. Mich. 2008). Because actual fraud is notoriously hard to prove, courts routinely look to "badges of fraud," which shift the burden to the defendant to show that the transactions was not made with fraudulent intent. Slone v. Lassiter (In re Grove-Merritt), 406 B.R. 778, 793–94 (Bankr. S.D. Ohio 2009); Rieser v. Hayslip (In re Canyon Sys. Corp.), 343 B.R. 615, 636 (Bankr. S.D. Ohio 2006). Badges of fraud which may be relevant to the current case are "[w]hether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the obligation incurred" and "[w]hether the debtor was solvent or became insolvent shortly after the transfer was made or the obligation was incurred." In re Grove-Merritt, 406 B.R. at 794.[1]

---

[1] Section 1336.04(B) of the Ohio Revised Code lists the following badges of fraud:

> (1) Whether the transfer or obligation was to an insider;
> (2) Whether the debtor retained possession or control of the property transferred after the transfer;
> (3) Whether the transfer or obligation was disclosed or concealed;
> (4) Whether before the transfer was made or the obligation incurred, the debtor had been sued or threatened with suit;
> (5) Whether the transfer was of substantially all of the assets of the debtor;
> (6) Whether the debtor absconded;

4

To prove good faith, and therefore protection under § 548(c), a majority of courts apply an objective test, but a recent wave of courts within the Sixth Circuit have moved towards a hybrid objective/subjective test. Meoli v. Huntington Nat'l Bank (In re Teleservices Grp., Inc.), 444 B.R. 767, 795–810 (Bankr. W.D. Mich. 2011); Christian Bros. High School Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Grp., LLC), 439 B.R. 284, 310–14 (Bankr. S.D.N.Y. 2010). Courts applying the objective test "look to whether the transferee objectively knew or should have known" that the debtor was engaged in fraudulent activity. In re Grove-Merritt, 406 B.R. at 811. If the transferee knew or should have known of the debtor's potential fraud, the transferee is put on "inquiry notice" and must conduct a sufficiently in-depth investigation. Id. A transferee is put on "inquiry notice" if they are aware the debtor is insolvent or that the debtor made the transfer with a fraudulent purpose. In re Bayou Grp., 439 B.R. at 311. Under the hybrid test, good faith boils down to a three step inquiry. "The first step . . . is an investigation into what the transferee in fact knew. That is, was the transferee subjectively aware of 'badges of fraud' or 'red flags' that raised a duty of inquiry?" Tabor v. Kelly (In re Davis), 2011 WL 5429095, at *25 (Bankr. W.D. Tenn. 2012). Second, if the transferee was aware of sufficient "badges of fraud," did the transferee conduct a "diligent inquiry?" Id. Finally, if the transferee's "diligent inquiry" did not discover the fraud, "the court must determine whether any reasonable investigation would have disclosed the transferor's . . . fraudulent intent." Id. The court need not determine which test is appropriate, as Debtor's badges of fraud are relevant under either test. Under the objective standard, the badges help illustrate whether a reasonable transferee would have engaged in an investigation of the debtor. Rafoth v. First Nat'l Bank of Barnesville (In re Baker & Getty Fin. Servs., Inc.), 98 B.R. 300, 308–09 (Bankr. N.D. Ohio 1989). Under the objective/subjective hybrid standard, a sufficient number of badges of fraud may convince the court that the transferee had actual knowledge of the debtor's fraudulent intent. In re Teleservices Grp., 444 B.R. at 774; In re Davis, 2011 WL 5429095, at *25.

As the brief analysis of the law surrounding § 548(a)(1)(A) and § 548(c) indicates, an examination of Debtor's actions, specifically the presence or absence of "badges of fraud," is relevant to both claims. While it is true that § 548(c) and (a)(1)(A) have independent elements, courts should not grant bifurcation when there is significant evidentiary overlap. While a finding that McIntosh acted in good faith will eliminate liability on a § 548(a)(1)(A) claim, simply because an element is dispositive does not require bifurcation. For example, the case of Duggan v. The Village of New Albany centers around a plaintiff's allegation that a New Albany police officer violated his constitutional rights. 2009 WL 2132622, at *3–4 (S.D. Ohio 2009). The case contained two main issues: (1) if the police officer's actions violated the defendant's constitutional rights and (2) if the city is liable for the police officer's alleged misconduct. Id.

---

(7) Whether the debtor removed or concealed assets;
(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the obligation incurred;
(9) Whether the debtor was solvent or became insolvent shortly after the transfer was made or the obligation was incurred;
(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

5

New Albany moved for bifurcation of the two claims, but the district court denied the request, reasoning that if the claims were bifurcated the entirety of the officer's actions may have to be presented in both trials to put New Albany's liability in the proper context. Id. The court reached this conclusion even though a finding in New Albany's favor on count one would be dispositive of count two. See also ABB Indus. Sys., Inc. v. Prime Tech., Inc., 32 F. Supp. 2d 38, 43–44 (D. Conn. 1998) (holding that bifurcating a trial relating to a chemical spill into two parts, one of which would determine if the defendant was responsible for the pollution and another deciding whether the defendant complied with federal law, was inappropriate because both trials would required the presentation of evidence relating to the original spill). The court also notes that if all dispositive issues required bifurcation, most affirmative defenses would require separate trials.

The court finds that bifurcation is not appropriate in the current case. The significant overlap in evidence required for claims under § 548(a)(1)(A) and § 548(c) would create inefficiency and waste judicial resources, which is counter to the purpose of Rule 7042(b). In sum, the balance of factors do not favor bifurcation.

## Conclusion

Based on the foregoing, McIntosh's Motion to Bifurcate is DENIED. An order will be entered simultaneously with this opinion.

It is so ordered.

#   #   #

**Anthony J. DeGirolamo**
Courtyard Centre
Suite 625
116 Cleveland Avenue NW
Canton, OH 44702

**Jack B Cooper**
Day Ketterer
200 Market Ave N
#300
Canton, OH 44701-4213

**McIntosh Oil Co.**
PO Box 7009
Station A
Canton, OH 44705

**Bridget Aileen Franklin**
Brouse & McDowell, LPA
388 S. Main St.

6

#500
Akron, OH 44311

**Joseph T Dattilo**
600 Superior Avenue, E., Suite 1600
Cleveland, OH 44114

7