**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 03:17 PM July 28, 2015**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| LAUREL VALLEY OIL CO., | CASE NO. 05-64330 |
| Debtor. | ADV. NO. 12-6014 |
| | JUDGE RUSS KENDIG |
| ANTHONY J. DEGIROLAMO, TRUSTEE, | |
| Plaintiff, | **MEMORANDUM OF OPINION (NOT INTENDED FOR PUBLICATION)** |
| v. | |
| MCINTOSH OIL CO., | |
| Defendant. | |

Currently before the court is McIntosh Oil Co.'s ("McIntosh") motion seeking to exclude the testimony of Jarod L. Nottingham ("Nottingham"), a witness expected to be called in the forthcoming trial between Anthony J. DeGirolamo, the chapter 7 panel trustee ("Trustee") and McIntosh. McIntosh also filed a motion seeking to exclude the testimony of Doctor Anurag Gupta in the same trial, but Trustee's response indicates he no longer plans to call Dr. Gupta to testify, making McIntosh's motion regarding Dr. Gupta moot.

Nottingham is an individual with extensive experience buying diesel fuel in Northern Ohio, as well as a number of other locations across the United States. While McIntosh agrees

Nottingham has extensive fuel purchasing experience, it argues he does not have knowledge in the types of prepay contracts entered into between McIntosh and Laurel Valley Oil Co. ("Debtor"), and therefore does not meet the expert testimony requirements of Federal Rule of Evidence 702. In response, Trustee argues that McIntosh's prepay financial transaction are only one element of his complaint, leaving other areas within Nottingham's realm of expertise where he may validly testify.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and/or (H).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

### Facts

Before bankruptcy, Debtor was in the business of buying and selling petroleum products, including diesel fuel. Debtor encountered cash flow problems, and in order to quickly raise money, began selling diesel fuel to McIntosh, as well as other customers, on pre-pay contracts at prices significantly lower than other suppliers in the area, and also below Debtor's cost to purchase the fuel. Debtor was losing money on every sale, and eventually was unable to afford the purchase of fuel it was planning to sell below cost. On July 27, 2005, Debtor was forced into bankruptcy via an involuntary chapter 11 bankruptcy petition. Debtor converted the case to a chapter 7 liquidation on September 15, 2005.

A number of years later, on January 31, 2012, Trustee brought the underlying adversary case seeking to recover allegedly preferential transfers between Debtor and McIntosh. Trustee's theory is as follows: McIntosh purchased diesel fuel from Debtor for $11,379,731.19 when the actual market price for the fuel was $15,050,917.68. Therefore, the $3,671,186.50 difference between McIntosh's diesel fuel purchase price and the prevailing market price amounts to a fraudulent or preferential transfer recoverable for the benefit of the bankruptcy estate.

Trustee's initial complaint leveled seven counts against McIntosh, but the court granted summary judgment in favor of McIntosh on counts II–VII in an opinion dated March 5, 2013 ("2013 Opinion"). The remaining count is for fraudulent transfers under § 548(a)(1)(A) of the United States Bankruptcy Code ("the Code"), which allows Trustee to avoid transfers of a debtor's interest in property made within two years of the petition date that occurred "with actual intent to hinder, delay, or defraud" creditors. However, § 548(c) provides a "safe harbor" against § 548(a) liability if the relevant transfers were made "for value and in good faith." In the 2013 Opinion, the court determined that McIntosh satisfied the "forward contract" requirements of § 546(e), establishing that McIntosh's purchase of diesel fuel from Debtor was for "value." DeGirolamo v. McIntosh Oil Co. (In re Laurel Valley Oil Co.), 2013 WL 832407 (Banrk. N.D. Ohio 2013). However, whether McIntosh's fuel purchases were in good faith, and therefore satisfy the other requirement of the § 548(c) safe harbor, remains in dispute. Additionally, if the § 548(c) safe harbor is unavailable, Trustee must satisfy each element of a § 548(a)(1)(A) fraudulent transfer claim.

The current opinion deals only with McIntosh's motion to exclude testimony under Federal Rule of Evidence 702. Nottingham is the fuel procurement manager for Kenan Advantage Group ("Kenan"), a petroleum distribution company based in Northern Ohio. Nottingham is responsible for purchasing diesel fuel to supply Kenan's bulk fuel tank facilities, which Kenan uses to fuel a fleet of approximately six thousand vehicles. Nottingham has been involved in the purchase of diesel fuel for over ten years, and in the most recent year was responsible for the purchase of approximately fifty-five million gallons of diesel fuel. Nottingham is also active in the diesel fuel community, regularly discussing pricing trends and other market changes with industry peers. Nottingham holds an undergraduate degree in business administration from Malone University in Canton, Ohio. In association with Nottingham's testimony, he submitted an expert report including the following observations and opinions: (1) Debtor's diesel fuel pricing was always significantly below the widely used Oil Price Information Service ("OPIS") benchmark; (2) Debtor's diesel fuel pricing averaged $0.44 per gallon below the prevailing average price and were unreasonable by industry standards;[1] (3) Debtor's diesel fuel pricing did not react to market trends, such as following fluctuations in the relevant commodities markets; (4) Debtor was not involved in a hedging contract that would justify the low prices; (5) prepayment contracts are very unusual in the diesel market; and (6) prepayment contracts do not justify Debtor's low prices. According to Trustee, Nottingham's testimony at trial will not cover every portion of his expert report, but will be limited to the following areas: (1) Debtor's diesel fuel pricing was always substantially below OPIS and other market participants; (2) Debtor's pricing did not follow general market trends; and (3) Debtor's prepayment contracts and other transaction terms were very unusual by industry standards. Importantly, Nottingham will not testify regarding the proper prepayment discount, if any, associated with Debtor and McIntosh's prepayment fuel contracts or with Debtor's potential hedging or futures contracts.

On June 29, 2015, McIntosh filed a motion requesting leave to file a reply brief to Trustee's response to McIntosh's motion seeing to exclude Nottingham's testimony under Federal Rule of Evidence 702. Under Local Bankruptcy Rule 9013-1(c), "a reply may be filed within 7 days after the date of service . . . of the response." McIntosh's request for leave to file a reply was not filed until eleven days after Trustee's response. See Fed. R. Bankr. P. 9006(a). However, based on the broad discretion granted to trial courts in scheduling matters, the court accepts McIntosh's late filed motion. United States v. Reynolds, 543 Fed. App'x 347, 356 (6th Cir. 2013). The court gave McIntosh until July 24, 2015 to file a reply brief, but McIntosh did not file its reply brief until July 27, 2015. While the court could refuse to evaluate McIntosh's additional arguments based on multiple late filings, the court will not do so. The arguments discussed in McIntosh's reply brief are incorporated into the court's analysis.

## Law and Analysis

A lay witness is generally prohibited from giving opinion testimony and is limited to matters where he has personal knowledge. Fed. R. Evid. 602, 702. However, an expert witness may present opinion testimony if grounded in his expertise and a proper evidentiary basis. Fed.

---

[1] The diesel fuel market normally operates on very slim margins, often less than $0.01 a gallon, making a $0.44 per gallon discount very unusual.

3

R. Evid. 702–03. Under Federal Rule of Evidence 702, an expert's opinion is admissible if: "(1) the expert is qualified as such by knowledge, skill, experience, training, or education; (2) the testimony is relevant, meaning it will assist the trier of fact to understand the evidence or to determine a fact in issue; and (3) the testimony is reliable, meaning it is based on sufficient facts or data, is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case." Great N. Ins. Co. v. BMW of N. Am. LLC, 2015 WL 3936229, at *2 (S.D. Ohio 2015) (citing In re Scrap Metal Antitrust Litig., 527 F.3d 517, 528–29 (6th Cir. 2008)); see also Fed. R. Evid. 702.

Prior to the adoption of Rule 702, courts in the United States applied a "generally accepted" principle to determine whether an expert was qualified to give opinion testimony. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 585 (1993). However, in the oft cited Daubert decision, the United States Supreme Court jettisoned the "general acceptance" standard in favor of Federal Rule of Evidence 702. Id. at 586–87. Under the Supreme Court's interpretation, expert testimony needs to be both relevant and reliable before admitted at trial. Id. at 589. Information is relevant if it will "assist the trier of fact to understand the evidence or determine a fact at issue." Id. at 591. Information is reliable if it is based on "scientific knowledge," which requires "a grounding in the methods and procedures of science." Id. at 589–90. To help courts determine the reliability of expert testimony, the Supreme Court outlined a number of relevant factors, such as whether the underlying methodology has been subject to peer review, has been independently tested, and is "generally accepted." Id. at 593–94. However, the Supreme Court stressed that each admissibility inquiry is fact intensive, and many other factors may be relevant in differing circumstances. Id. at 593; Decker v. GE Healthcare Inc., 770 F.3d 378, 392 (6th Cir. 2014). While Daubert dealt exclusively with scientific testimony, the Supreme Court in Kumho Tire made clear that Daubert's expert testimony standards apply equally to "technical" and "other specialized knowledge." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999). Because technical and scientific knowledge are often based on different foundations, the Daubert factors are "of limited utility in the context of non-scientific expert testimony." First Tenn. Bank Nat'l Ass'n v. Barreto, 268 F.3d 319, 334 (6th Cir. 2001); see also Lightfoot v. MXEnergy Elec., Inc. (In re MBS Mgmt. Servs., Inc.), 690 F.3d 352, 358 (5th Cir. 2012); Sharp v. Chase Manhattan Bank USA, N.A. (In re Commercial Fin. Servs., Inc.), 350 B.R. 520, 526–27 (N.D. Okla. 2005). For example, when an expert's testimony is based on industry experience, peer review and the scientific method have little-to-no bearing on admissibility. First Tenn. Bank, 268 F.3d at 334. Instead, an expert's testimony based on his professional experience is reliable if the testimony employs "the same level of intellectual rigor that characterizes the practice in the relevant field." Kumho Tire, 526 U.S. at 152.

The combination of Daubert and Rule 702 place trial courts in a "gate keeper" role, requiring the court to conduct a "preliminary assessment of whether the reasoning and methodology underlying the testimony is [] valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Champion v. Outlook Nashville, Inc., 380 F.3d 893, 907 (6th Cir. 2004). It is important to stress that the court's gatekeeping role does not extend to a determination of whether the expert is correct, but only whether the testimony "rests upon a reliable foundation, as opposed to, say, unsupported speculation." In re Scrap Metal, 527 F.3d at 529–30. Expert testimony should not be excluded simply due to legitimate questions surrounding the accuracy of an expert's testimony or underlying data. Instead, "[v]igorous cross-

4

examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. However, a court need not admit "testimony that is connected to existing data only by the *ipse dixit* of the expert," or, in other words, a court may exclude an expert's testimony when "there is simply too great an analytical gap between the data and the opinion proffered." Nelson v. Tenn. Gas Pipeline Co., 243 F.3d 244, 254 (6th Cir.2001).

The transition from the "generally accepted" standard to Rule 702 attempts "to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." Ask Chemicals, LP v. Computer Packages, Inc., 593 Fed. App'x 506, 509 (6th Cir. 2014). As such, "rejection of expert testimony is the exception, rather than the rule." In re Scrap Metal, 527 F.3d at 530. Additionally, when the fact finder is a judge, instead of a jury, "there is little, if any, possibility of confusion or misunderstanding by the factfinder." Buckeye Ret. Co. v. Hake (In re Hake), 2007 WL 7581218, at *3 (Bankr. N.D. Ohio 2007); see also In re Salem, 465 F.3d 767, 777 (7th Cir. 2006) ("The gatekeeping function that Daubert talks about is most pointedly at issue in a jury trial where a jury might be misled by an expert who doesn't have sufficient qualifications."); Gibbs v. Gibbs, 210 F.3d 491, 500 (5th Cir. 2000); Larosa v. Pecora, 2009 WL 3460101, at *3 (N.D. W. Va. 2009). A trial court's admissibility determinations regarding expert testimony under Rule 702 are reviewed for an abuse of discretion. Superior Prod. P'ship v. Gordon Auto Body Parts Co., 784 F.3d 311, 322–23 (6th Cir. 2015).

In the current case, McIntosh seeks to completely exclude Nottingham's expert testimony. Specifically, McIntosh argues that Nottingham does not have sufficient experience with futures and hedging contracts to testify about the business relationship between Debtor and McIntosh. As a basis for the exclusion, McIntosh points to Nottingham's deposition testimony where he states that he never personally entered into prepayment, futures, or hedging contracts, and is unable to determine what pricing discount such contract terms should provide. However, Nottingham notes his discussions with a number of financial service providers about potentially entering into various forms of hedging and futures contracts, but always determined that such contracts were not necessary under Kenan's business model. Thus, based on a lack of direct first-hand experience, Nottingham agrees with McIntosh that he lacks expertise concerning certain types of futures contracts. McIntosh also argues that Nottingham's opinions and observations within his expert report are not true expert opinions, but are instead only restatements of facts or "common sense" observations. McIntosh believes that a fact finder can be given the factual basis of Nottingham's expert report and use common knowledge to reach his own conclusions.

Trustee agrees that Nottingham does not have extensive hedging or futures experience, and therefore Nottingham will not testify to that point. Instead, Nottingham will testify to his expertise in other areas of the oil and gas industry, where Nottingham's direct experience is sufficient to satisfy the admissibility requirements of Daubert and Rule 702.[2] Trustee notes that the remaining elements of a fraudulent transfer claim under § 548(a)(1)(A) and the § 548(c) safe

---

[2] Obviously, an expert may be qualified to present expert testimony in one area, but prohibited from addressing other areas, even within the same trial. Express Energy Servs. Operating, L.P. v. Hall Drilling, LLC, 2015 WL 3743795, at *9–10 (S.D. Ohio 2015) (allowing an oil industry expert to testify regarding normal oil industry practices, but not to testify about a specific oil well software system in which the expert had no experience).

5

harbor revolve around McIntosh's state of mind when purchasing fuel from Debtor, and specifically whether McIntosh acted in "good faith" and without the "intent to hinder, delay, or defraud" creditors. According to Trustee, the normal pricing practices of the diesel fuel industry are relevant to such state-of-mind inquiries, as contract terms and pricing outside industry standards should raise "red flags" prompting additional investigation. Nottingham's testimony is also relevant to a damages calculation, as Nottingham has extensive experience buying and selling diesel fuel.

First, the court has no hesitation finding that Nottingham's extensive employment buying diesel fuel in Ohio, and across the United States, qualifies him as an expert in diesel fuel prices and normal industry practices. Extensive industry experience, without more, may be sufficient to qualify an individual as an expert. David E. Watson, P.C. v. United States, 668 F.3d 1008, 1014 (8th Cir. 2012) ("[E]ven if [the expert's] education and training was not specifically tailored to [relevant] issues, he certainly has demonstrated practical experience qualifying him as an expert in the field."); Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc., 988 F.Supp.2d 395, 403 (S.D.N.Y. 2013) ("A party . . . may be qualified merely by his experience."); First Tenn. Bank, 268 F.3d at 332; Mar Oil Co. v. Korpan, 973 F.Supp.2d 775, 785 (N.D. Ohio 2013); Stapert v. Dakota, Minn. & E. R.R. Corp., 2012 WL 11072674, at *2 (D. Wyo. 2012). For example, in Mar Oil Co. v. Korpan, the court determined that an expert's thirty-four years of experience in the oil and gas industry, combined with the completion of consulting contracts in the relevant geographic region, satisfied Daubert and Rule 702. 973 F.Supp.2d at 785. Nottingham has over ten years of experience buying and selling fuel, and annually purchases approximately fifty-five million gallons of diesel fuel from over twenty different suppliers. The court's holds that Nottingham's experience qualifies him as an expert in diesel fuel pricing and general industry practices.

An expert's testimony must also be relevant before allowed at trial. Relevance is an "extremely liberal" standard, allowing all evidence not otherwise excluded that "has any tendency to make a fact more or less probable than it would be without the evidence" and is of consequence to a claim before the court. Fed. R. Evid. 401; Dortch v. Fowler, 588 F.3d 396, 400–01 (6th Cir. 2009). In the current adversary, McIntosh's good faith or fraudulent intent remain at issue under § 548(a)(1)(A) or (c), making evidence concerning McIntosh's state-of-mind relevant. According to Trustee, Nottingham will testify that Debtor's pricing was much lower that other market participants, Debtor's pricing did not follow market trends, and the terms of the transactions were very unusual, which, in sum, should have raised alarms causing McIntosh to deeply evaluate Debtor before entering into any fuel contracts. ECF No. 105, at 5. Such evidence, if credited by a finder of fact, supports Trustee's belief that McIntosh's purchase of fuel was completed with fraudulent intent. Nottingham's proposed testimony is relevant to Trustee's remaining claims.

Finally, to survive Rule 702, Nottingham's testimony must be sufficiently reliable. "It is well established that experience-based testimony satisfies Daubert's reliability standard" Great N. Ins. Co., 2015 WL 3936229, at *7–8; see also Fed. R. Evid. 702 (allowing expert testimony from an individual qualified by "knowledge, skill, experience, training *or* education" (emphasis added)). When technical or experience based testimony is at issue, reliability requires the expert's trial testimony uses "the same level of intellectual rigor that characterizes the practice in

6

the relevant field." Kumho Tire, 526 U.S. at 152. An expert's conclusions based on data and experience are not "guesses pulled from thin air," but are instead valid expert testimony. Jahn v. Equine Servs., PSC, 233 F.3d 382, 390–92 (6th Cir. 2000). Additionally, experts often employ assumptions in their analysis, and disagreement among experts as to the appropriateness of an assumption does not render an expert opinion inadmissible, but instead goes to the weight given the expert's testimony. In re Commercial Fin., 350 B.R. at 528; Daley v. Chang (In re Joy Recovery Tech.), 286 B.R. 54, 70 (Bankr. N.D. Ill. 2002). However, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered," and therefore reject an expert's testimony. Nelson, 243 F.3d at 254. The exclusion of expert testimony is the exception, not the rule. Little Hocking Water Ass'n v. E.I. Du Pont De Nemours & Co., 2015 WL 1055305, at *3 (S.D. Ohio 2015).

Nottingham's expert report rests on daily pricing data from OPIS for seven Ohio cities, a listing of billing documents and purchase summaries for transactions between McIntosh and Debtor, deposition transcripts, along with other information. Specifically, OPIS is a commonly used diesel fuel pricing information system used to evaluate diesel fuel pricing trends, especially within a specific geographic footprint. Comparing OPIS data to a quoted price on a specific date is a normal diesel industry practice. Nottingham's factual basis is sufficient, when combined with his industry experience, to provide a foundation for his expert testimony. While McIntosh challenges the accuracy of OPIS pricing data, questions surrounding an expert's underlying data go to the relative weight of such testimony, not its overall admissibility. In re Scrap Metal, 527 F.3d at 530. Courts should even allow expert testimony based on allegedly erroneous facts, as long as the contested facts have support within the record. Id.; see also Jahn, 233 F.3d at 390–93; McLean v. 988001 Ont., Ltd., 224 F.3d 797, 801 (6th Cir. 2000). McIntosh's concerns surrounding the factual underpinning of Nottingham's report are more properly reserved for cross-examination, not a Rule 702 admissibility challenge.

The main thrust of McIntosh's motion seeking to deem Nottingham's expert testimony inadmissible surround his experience, or lack thereof, with hedging and futures contracts. Specifically, McIntosh points to Nottingham's inability to analyze what pricing discount, if any, is appropriate based on McIntosh's prepayment for diesel fuel. Trustee responds by noting that Nottingham will not testify about futures, hedging, or prepayment contracts. Instead, Nottingham will focus on diesel fuel pricing and industry practices, matters in which the court above qualified Nottingham as an expert. While Trustee's voluntary limitations on Nottingham's testimony render the issue moot, valid arguments exist that would allow Nottingham to testify, as an expert, on a reasonable discount associated with a short-term prepayment contract. Nottingham's familiarity with the diesel fuel industry, as well as customary payment terms and any associated discounts for shorter payment periods, give him valuable insight into a reasonable discount for a pre-payment contract. See Larosa, 2009 WL 3460101, at *2 (holding that two certified public accountants with extensive experience could testify regarding forensic fraud accounting, even though not licensed as a certified fraud examiner); Younglove Constr., LLC v. PSD Dev., LLC, 782 F.Supp.2d 457, 463–64 (N.D. Ohio 2011) (holding that an experienced appraiser could present testimony regarding the expense associated with a construction defect, even though the expert had little experience in construction defects); BL Dev. Corp. v. Masella (In re Masella), 2007 WL 2302312, at *2–3 (Bankr. D. Conn. 2007) (allowing an accountant to testify regarding the debtor's lack of business records, even though the expert had no experience

7

in the debtor's specific industry); Balm v. Salliemae Servicing Corp. (In re Balm), 333 BR 443 (Bankr. N.D. Iowa 2005) (holding that a psychiatrist is allowed to testify towards a debtor's physical ailments, even though such ailments were not his specific area of expertise); Haarhuis v. Kunnan Enters., Ltd., 223 B.R. 252, 256 (D.D.C. 1998) (allowing an expert on Chinese and international law to testify concerning the intersection of international law and bankruptcy, even though the expert had virtually no experience in bankruptcy law). Instead of inadmissibility under Rule 702, the proper method to challenge an expert's testimony surrounding areas sufficiently related to, but still outside, an expert's main area of expertise is through cross-examination. Debtor's lack of first-hand prepayment contract experience may alter the weight the finder of fact assigns the evidence. First Tenn. Bank, 268 F.3d at 333 ("[T]o the extent that [the expert] may have lacked familiarity with some aspects of banking relationships, the district court correctly reasoned that such unfamiliarity merely affected the weight and credibility of his testimony, not its admissibility."); Westminster Assocs. Ltd. v. Orkin Exterminating Co. (In re Westminster Assocs., Ltd.), 265 B.R. 329, 335 (Bankr. M.D. Fla. 2001).

      Finally, McIntosh argues that Nottingham's expert testimony is, in essence, unnecessary, as a fact finder is capable of viewing the relevant evidence, such as OPIS pricing data and invoices between McIntosh and Debtor, and reaching his own pricing conclusions. Therefore, according to McIntosh, Nottingham's testimony is nothing more than factual observations couched as opinions that will not assist the finder of fact. Case law supports McIntosh's position that reiterating factual information and "common sense" observations are not proper realms for expert testimony. For example, the Sixth Circuit has stated that "[i]f everyone knows [a specific fact or statement], then [the court] does not need an expert because the testimony will not assist the trier of fact." Berry v. City of Detroit, 25 F.3d 1342, 1350 (6th Cir. 1994) (internal quotations marks omitted)). Similarly, the Seventh Circuit has noted that an expert "must testify to something more than what is obvious to the layperson in order to be of any particular assistance to the [fact finder]." Dhillon v. Crown Controls Corp., 369 F.3d 865, 871 (7th Cir. 2001) (noting that "expert" testimony stating that a person is more likely to fall through an open door than a closed door is common sense and expert testimony is not appropriate); Highland Capital Mgmt., L.P. v. Schneider, 379 F.Supp.2d 461, 468–69 (S.D.N.Y. 2005) ("[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence."). However, the court believes Nottingham's testimony is much more than a simple reiteration of factual information or "common sense" observations. While Nottingham's testimony is grounded in factual pricing data, Nottingham's reference to such data does not transform his expert testimony into impermissible factual regurgitation. If Nottingham's entire expert testimony were the rote reading of price quotes, such testimony would likely be disallowed, but his proffered analysis is much more. For example, Nottingham's expert report indicates that diesel fuel sales operate on very thin margins often less than $0.01 per gallon, making Debtor's $0.44 per gallon discount unreasonable by industry standards. Such information is not common knowledge or simple factual observations. Additionally, Nottingham's report indicates that pre-pay contracts are rarely used in the diesel fuel industry, so unusual in fact that Nottingham has never heard of a party other than Debtor offering similar payment terms, another piece of relevant information not within a fact finder's common knowledge or easily derived from the presented factual information. In sum, Nottingham's testimony does not consist solely of factual regurgitation or "common sense" observations, but instead combines expert knowledge

with a factual underpinning to arrive at valid expert testimony, exactly as required by the Supreme Court in <u>Daubert</u> and <u>Khumo Tire</u>.

## Conclusion

Based on the foregoing analysis, Debtor's <u>Daubert</u> motion seeking to exclude Nottingham's proposed testimony under Federal Rule of Evidence 702 is **DENIED**. Debtor's related <u>Daubert</u> motion seeking to exclude Dr. Gupta's testimony is **DENIED** as moot.

It is so ordered.

#   #   #

**<u>Service List</u>**:

**Anthony J. DeGirolamo**
Courtyard Centre
Suite 625
116 Cleveland Avenue NW
Canton, OH 44702

**Jack B Cooper**
Day Ketterer
200 Market Ave N
#300
Canton, OH 44701-4213

**McIntosh Oil Co.**
PO Box 7009
Station A
Canton, OH 44705

**Joseph T Dattilo**
600 Superior Avenue, E., Suite 1600
Cleveland, OH 44114